JOURNAL ENTRY AND OPINION
{¶ 1} Kevin Hooks appeals his conviction for rape and sexual battery following a bench trial before Judge Janet R. Burnside. He claims it was error to deny his motion for acquittal and that his conviction was against the manifest weight of the evidence. We affirm.
 {¶ 2} From the record, we glean the following: Because of difficulties with her mother, then seventeen-year-old C.P. moved in with her grandmother. Hooks, her twenty-seven year-old cousin, lived on the same street, and the two often spent time together. On January 21, 2003, Hooks went to C.P.'s home around 10:00 p.m. and offered her some Hennessy cognac, which she drank. A short time later, they went to the attic, drank more cognac and, when the bottle was empty, he left to get another pint. When he returned, they went to his car and smoked a "blunt" or marijuana cigar and he and C.P., who was admittedly intoxicated and "high," went back into the house to watch television.
 {¶ 3} While C.P. was sitting on the floor, Hooks purportedly pulled her pants and underwear down to her ankles, performed oral sex on her and then raped her. She claimed she then began to vomit and ran to the kitchen followed by Hooks, who apologized. She continued to be ill, went to her room, changed her clothes and went to bed. Her grandmother, noting the light was on in C.P.'s bedroom, opened the girl's door and asked whether anything was wrong. C.P. responded that she wasn't feeling well.
 {¶ 4} Although the grandmother drove her to school in the morning and did not notice any unusual behavior, during one of her morning classes, C.P. began crying uncontrollably and left the class to go to the restroom where she was approached by a security guard. She told the guard what had happened the night before, was taken to the nurse's office to await her mother and grandmother and, after the guard told them about the incident, she was taken to the hospital where a rape kit was utilized.
 {¶ 5} Hooks was indicted on six counts of rape[1] and two counts of sexual battery.[2] Prior to trial, the State dismissed four counts of rape, and amended the remaining counts to delete the language that the victim was under the age of thirteen. During the trial, C.P. testified that she voluntarily consumed the liquor and smoked marijuana, but had never voluntarily engaged in any sex acts with her cousin. Conversely, Hooks testified that he believed the acts were consensual, but admitted that had they not been intoxicated, they would not have had sex.
 {¶ 6} Hooks was found guilty on one count of rape and guilty on both counts of sexual battery.[3] He was sentenced to six years in prison on the merged counts of rape and sexual battery, and a concurrent three-year term on the remaining sexual battery count. This appeal followed on the assignments of error set forth in Appendix A.
 MOTION FOR ACQUITTAL {¶ 7} Hooks claims that the State failed to establish his guilt, further claiming that there is no evidence that he is guilty of anything "other than having sexual relations with his cousin." At the close of the State's case, he moved for a Crim.R. 29 motion for acquittal, claiming that the State failed to prove the marital element of rape. Crim.R. 29 provides:
"The court on motion of a defendant or on its own motion,after the evidence on either side is closed, shall order theentry of a judgment of acquittal of one or more offenses chargedin the indictment, information or complaint, if the evidence isinsufficient to sustain a conviction of such offense oroffenses."
 {¶ 8} Whether the evidence presented is legally sufficient to sustain a verdict is a question of law.[4] Whether phrased in terms of a Crim.R. 29 motion, or in terms of a sufficiency of the evidence argument, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[5] A sufficiency challenge does not allow a reviewing court to weigh the evidence.[6]
 {¶ 9} The crime of rape is defined in R.C. 2907.02 as:
"(A)(1) No person shall engage in sexual conduct with anotherwho is not the spouse of the offender or who is the spouse of theoffender but is living separate and apart from the offender, whenany of the following applies: (a) For the purpose of preventingresistance, the offender substantially impairs the other person'sjudgment or control by administering any drug, intoxicant, orcontrolled substance to the other person surreptitiously or byforce, threat of force, or deception."
 {¶ 10} Sexual battery is defined in R.C. 2907.03 as:
"A) No person shall engage in sexual conduct with another, notthe spouse of the offender, when any of the following apply: (1)The offender knowingly coerces the other person to submit by anymeans that would prevent resistance by a person of ordinaryresolution. (2) The offender knows that the other person'sability to appraise the nature of or control the other person'sown conduct is substantially impaired."[7]
 {¶ 11} The record shows that Hooks came to his grandmother's house with liquor and offered it to C.P. and, after finishing the bottle, left and returned with more liquor. He testified that he was aware that C.P. was intoxicated and, although they had previously smoked marijuana together, they had never consumed liquor before this night. When asked, on a scale of one to ten, ten being the most intoxicated, how intoxicated he believed his cousin to be, Hooks rated her at "a nice six and a half."
 {¶ 12} Hooks admitted that, without any indication or cues from his cousin, he removed her pants and performed oral sex on her and, when C.P. asked him what he was doing, he just smiled at her. C.P. claimed she repeatedly asked him what he was doing, and asked him to stop. She also testified that she attempted to push him away, but he weighed over 230 pounds and she wasn't strong enough. Moreover, she stated that he asked her not to tell anyone about it. Hooks agreed that he was asked to stop while he was performing oral sex, and that she even pushed his head away. He also stated that he knew C.P. would never have had sexual relations with him had she been sober.
 {¶ 13} Hooks moved for acquittal twice. First, after the State rested, he asserted he could not be guilty of rape because the State failed to prove that he and C.P. were not married and there was no direct evidence that they were not in some type of "marital bliss." The motion was denied. Following his own testimony, he again moved for acquittal, generally claiming that the State failed to prove the elements of the crimes, and the motion was again denied.
 {¶ 14} The evidence shows that the State met its burden by showing not only that the sex acts were against C.P.'s will, but that Hooks voluntarily furnished drugs and alcohol to her. He recognized that his cousin was both intoxicated and high, substantially impairing any resistance she may have otherwise offered. Even in her inebriated state, she repeatedly asked him what he was doing and asked him to stop and he did not. This assignment of error lacks merit.
 II. MANIFEST WEIGHT OF THE EVIDENCE {¶ 15} Hooks claims that his convictions for both rape and sexual battery are against the manifest weight of the evidence. We disagree.
 {¶ 16} When evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror, and intrudes its judgment into proceedings which it finds to be fatally flawed through misinterpretation or misapplication of the evidence by a jury which has "lost its way."[8] This power is subject to strict and narrow constraints.
"Weight of the evidence concerns `the inclination of thegreater amount of credible evidence offered in a trial, tosupport one side of the issue rather than the other. It indicatesclearly to the jury that the party having the burden of proofwill be entitled to their verdict, if, on weighing the evidencein their minds, they shall find the greater amount of credibleevidence sustains the issue which is to be established beforethem. Weight is not a question of mathematics, but depends on itseffect in inducing belief.'" * * *
 "The court, reviewing the entire record, weighs the evidenceand all reasonable inferences, considers the credibility ofwitnesses and determines whether in resolving conflicts in theevidence, the jury clearly lost its way and created such amanifest miscarriage of justice that the conviction must bereversed and a new trial ordered. The discretionary power togrant a new trial should be exercised only in the exceptionalcase in which the evidence weighs heavily against theconviction."[9]
 {¶ 17} Hooks relies heavily on the testimony of his grandmother and her recollections of the events surrounding the incident. He notes that the three of them had dinner that evening; that when his grandmother awoke the next morning, he was still at the house; and that when his grandmother drove C.P. to school, she noted nothing unusual about the girl's demeanor. He claims that, "[I]f this was truly a rape, it stands to reason that [the victim's grandmother] would have known what occurred in her house."[10] We find it difficult to accept that the only question about whether Hooks raped and sexually battered C.P. is answered through the testimony of a third party in the dwelling.
 {¶ 18} The record reflects that he furnished alcohol and marijuana to his minor cousin, was well aware of her being intoxicated, and engaged in oral sex and intercourse with her despite her protests and requests that he stop. Her testimony and behavior during the incident, immediately following the incident, and the next day at school, support the fact that she did not consent to the sexual activity.
 {¶ 19} An argument that we give greater weight to the testimony of a non-witness to the events surrounding the rape simply because it was her house, rather than give credibility to the testimony of the victim herself and her subsequent behavior, lacks merit.
 {¶ 20} The judgment is affirmed.
Judgment affirmed.
Cooney and Gallagher, JJ., concur.
 APPENDIX A: "I. The Trial Court erred in denying appellant's motion forAcquittal as to the charges when the state failed to presentsufficient evidence that appellant committed these crimes."
 "II. Appellant's convictions are against the manifest weightof the evidence."
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] R.C. 2907.02.
[2] R.C. 2907.03.
[3] He also pleaded guilty to drug trafficking, a fifth degree felony, in CR-433239 and was given a concurrent six-month term of imprisonment.
[4] State v. Robinson (1955), 162 Ohio St. 486,124 N.E.2d 148.
[5] See State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52,678 N.E.2d 541; State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492.
[6] State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717, 720.
[7] R.C. 2907.03.
[8] State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52,678 N.E.2d 541.
[9] State v. Thompkins, 78 Ohio St.3d at 387, 1997-Ohio-52,678 N.E.2d 541.
[10] Appellant's brief, p. 12.